| | | |
|---|---|---|
| TAYLOR SKINNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JACOB MOORE, Individually and in his Official Capacity; | ) ) | Case No. _____ |
| | ) | JURY DEMANDED |
| KNOX COUNTY, TENNESSEE, a Political Subdivision of the State of Tennessee; | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes the Plaintiff, Taylor Skinner, and for cause of action against the Defendants would show as follows:

## I. INTRODUCTION

1. This is an action for damages arising under the Constitution of the United States and the laws of the State of Tennessee. Defendants violated the rights of Taylor Skinner that were secured to Mr. Skinner by the Fourth and Fourteenth Amendments to the United States Constitution. Defendant Deputy Jacob Moore lacked reasonable suspicion or probable cause to suspect that Mr. Skinner was intoxicated by alcohol or drugs. There was no indication by the plaintiff's demeanor, speech or the field sobriety tests that he was intoxicated. The toxicology report revealed that there was no alcohol or drugs in Mr. Skinner's system. This conduct by the defendants shocks the conscience and is not tolerated by civilized society.

1

## II. PARTIES

2.       Plaintiff Taylor Skinner is a citizen and resident of Knox County, Tennessee and resides at 428 Dogwood Glen Lane, Powell, Tennessee 37849.

3.       Defendant Deputy Jacob Moore is a citizen and resident of Knox County, Tennessee.  At all times material, Defendant Deputy Jacob Moore (hereafter referred to as "Deputy Moore") was employed and/or serving as a Deputy with the Knox County Sheriff's Office and was acting under the color of state law.  Deputy Moore is being sued both in his individual capacity and in his official capacity. Deputy Moore can be served with service of process through the Knox County Sheriff's Office and accepted by Tom Spangler, Sheriff of Knox County.

4.       Defendant Knox County, Tennessee is a governmental entity created and existing in the State of Tennessee and can be served through its agent for service of process: Glenn Jacobs, County Mayor, City County Building, Suite 615, 400 Main Street, Knoxville, TN 37902.

## III. JURISDICTION AND VENUE

5.       This Court has jurisdiction over Plaintiff's claims brought under Title 42 of the United States Code Section 1983.  See 28 U.S.C. §§ 1331, 1343(a)(3).

6.       Venue exists in the United States District Court, Eastern District of Tennessee at Knoxville, pursuant to 28 U.S.C. § 1391(b)(1) (the district in which any defendant resides) and/or 28 U.S.C. § 1391(b)(2) (the district in which a substantial part of the events or omissions giving rise to the claim occurred).

7.       This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2

## IV. STATEMENT OF FACTS

8.     Shortly after midnight on April 11, 2025, Plaintiff Taylor Skinner was working out at a Planet Fitness gym in Knoxville, Tennessee.

9.     Plaintiff was wearing workout clothes consisting of tennis shoes, sweat pants, t-shirt and a headband.

10.     After completing his workout, the plaintiff left Planet Fitness and started driving home.

11.     Earlier in the day, the plaintiff had used Lysol disinfectant wipes to clean the interior of his vehicle. Plaintiff kept the container of Lysol wipes in the passenger side of his vehicle.

12.     In the cupholders of the plaitniff's vehicle, there was a protein drink and an open can of Le Croix sparkling water.

13.     A package of Le Croix sparkling water was in the front passenger seat.

14.     As the plaintiff was driving home, the weather outside was foggy, making visibility more difficult.

15.     At approximately 12:59 a.m., the plaintiff was traveling east on West Emory Road approaching the intersection of Heiskell Road when Defendant Officer Jacob Moore ("hereinafter referred to as Officer Moore") initiated a traffic stop.

16.     Deputy Moore initiated the traffic stop because he allegedly observed the plaintiff with a defective passenger taillight and observed the plaintiff cross the double yellow line four times.

17. Video from Deputy Moore's body cam show no defects with the plaintiff's passenger side taillights. Additionally, there does not appear to be a double yellow line on the section of West Emory Road where Deputy Moore was following the plaintiff.

18. When Deputy Moore initially spoke with the plaintiff, the plaintiff apologized to Deputy Moore saying, "I really am sorry, I guess I just had a hard time seeing the lines." Deputy Moore responded, "Yeah, it's a little foggy out here."

19. At no time during the traffic stop did the plaintiff exhibit slurred speech, slow reaction time, swaying or being unsteady on his feet.

20. During the traffic stop, the plaintiff spoke clearly, and responded coherently to Deputy Moore's questions.

21. Upon returning to his patrol vehicle and talking with another police officer, Deputy Moore stated, "Yeah he's definitely 49. Well, he's been drinking at least. Smells like alcohol. He's got an open twisted tea in the cupholder."

22. None of the assumptions made by Deputy Moore in paragraph 22 were true.

23. Plaintiff denied drinking any alcohol and explained to Deputy Moore that the open container in his vehicle was a protein drink.

24. Deputy Moore then stated, "So I smell the alcohol coming from you, and the way you were driving, alright, and your eyes are glassy, they are reddend…."

25. Plaintiff consented to perform field sobriety tests.

26. Deputy Moore then had the plaintiff perform the Horizontal Gaze Nystagmus Test, the Walk and Turn test, the One Leg Stand test and finally the Horizontal Gaze Nystagmus Test again.

4

27. During the first Horizontal Gaze Nystagmus Test, Deputy Moore failed to administer the test pursuant to the National Highway Traffic Safety Administration (NHTSA) guidelines.

28. Despite Deputy Moore's failure to administer the test properly, the plaintiff properly performed the test with no signs of impairment.

29. NHTSA guidelines caution law enforcement that various factors can affect the reliability of the Walk and Turn test, such as a person's weight and weather conditions.

30. Plaintiff performed the Walk and Turn test with some instances of appearing unbalanced; however, he completed walking the eighteen steps as instructed by Deputy Moore.

31. During the One Leg Stand test, the plaintiff satisfactorily performed the test with minimal arm movements for support. There was no sign of impairment.

32. Finally, Deputy Moore administered the Horizontal Gaze Nystagmus Test again.

33. Again, the plaintiff properly performed the test with only minimal head movements. There were no signs of impairment.

34. Despite showing no signs of impairment during three of the four administered tests, Deputy Moore placed the plaintiff under arrest for DUI.

35. Prior to placing the plaintiff under arrest, another officer approached Deputy Moore and informed him that the open container in the vehicle was not a twisted tea, but was actually a Le Croix.

36. After being placed under arrest, the plaintiff argued that he had not drunk any alcohol. Deputy Moore replied that the tests showed that he was under the influence and that "He literally smelled like alcohol."

37. After Deputy Moore continued to tell the plaintiff that he smelled alcohol, Plaintiff explained to the officer that he did have a lysol in the car. Deputy Moore responded, "That's not the same."

38. Deputy Moore than went to search the plaintiff's vehicle.

39. After opening the driver's side door, Deputy Moore told another officer, "It reaks in here." The other officer responded, "I smell like Lysol spray." Deputy Moore responded, "No I don't I smell the alcohol…. He smells like alcohol too. Straightup."

40. As Deputy Moore searched the vehicle, another officer told Deputy Moore that Plaintiff stated that he had been to the gym and had not drunk alcohol for over one year. Deputy Moore replied, "I don't think so."

41. Following the plaintiff's arrest, the officers stated that the arrest probably would not affect the plaintiff's employment and that the District Attorney would probably agree to a plea deal.

42. There were no alcoholic beverages found in the plaintiff's vehicle.

43. Upon entering the jail, the plaintiff had his blood drawn.

44. The results of the blood draw revealed no evidence of alcohol or drugs in the plaintiff's system.

45. After receiving proof that the plaintiff was not driving under the influence of drugs or alcohol at the time of his arrest, the charges against the plaintiff were dismissed.

## V. CAUSES OF ACTION

### A. 42 U.S.C. § 1983
### Fourth Amendment Violation – Unlawful Detention, False Arrest and Malicious Prosecution.

## Individual Liability

46. Plaintiff hereby incorporates paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. A cause of action exists under 42 U.S.C. § 1983 for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by federal law and the Constitution of the United States of America.

48. The Fourth Amendment prohibits a law enforcement officer from detaining a person longer than necessary to issue a traffic citation unless there is "reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010) (internal quotation marks omitted).

49. The Fourth Amendment prohibits a law enforcement officer from arresting a person unless there is probable cause to suspect that "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." See *Radvansky v. City of Olmsted*, 496 F.3d 609, 614-15 (6th Cir. 2007) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

50. Deputy Moore lacked reasonable suspicion and probable cause that the plaintiff was driving under the influence of alcohol or drugs.

51. Deputy Moore lacked reasonable suspicion and probable cause to detain the plaintiff for field sobriety tests.

52. Deputy Moore lacked reasonable suspicion and probable cause to charge the plaintiff with Driving Under the Influence.

53. Deputy Moore initiated the traffic stop because he allegedly observed the plaintiff

cross the median several times; however, the weather conditions at that time were foggy making visibility difficult.

54.     Deputy Moore unreasonably assumed the plaintiff was intoxicated based on the smell of Lysol and the belief he saw an open container of alcohol.

55.     Throughout the course of the traffic stop, multiple other officers told Deputy Moore that they smelled Lysol, not alcohol, and other officers showed Deputy Moore that the open container was sparkling water, not alcohol.

56.     Deputy Moore deliberately chose to hold onto his false belief that he smelled alcohol despite being confronted with proof that there was no evidence of alcohol.

57.     Deputy Moore deliberately chose to ignore that the plaintiff did not show signs of impairment in his speech, understanding or when standing and moving.

58.     The plaintiff performed three of the four field sobriety tests in satisfactory fashion. The only test the plaintiff did not perform well on was the less-reliable Walk and Turn test.

59.     Deputy Moore deliberately chose to ignore that the plaintiff passed these other, more reliable, tests and then falsely asserted to the other officers, as well as in his arrest affidavit, that the plaintiff had performed poorly on all of the tests.

60.     The blood test administered shortly after the plaintiff's arrest showed no evidence of any alcohol or drugs in the plaintiff's system.

61.     Deputy Moore was deliberately indifferent to the requirements of the Fourth Amendment in ignoring the evidence that Plaintiff was not under the influence of alcohol or drugs.

62.     Deputy Moore was deliberately indifferent to the requirements of the Fourth Amendment in asserting that he smelled alcohol when there was no evidence to support that conclusion and when faced with contradicting evidence by the plaintiff and fellow officers.

63. Deputy Moore was deliberately indifferent to the requirements of the Fourth Amendment when he made false statements to other officers and in his arrest affidavit that the plaintiff performed poorly on all of the field sobriety tests.

64. Any reasonable observer, given the facts and circumstances of this incident, would come to the unavoidable conclusion that this Defendant's conduct was objectively unreasonable so as to be unacceptable in a civilized society and shocking to the conscience. On any objective scale, the actions and conduct of Deputy Moore constitutes an arbitrary and capricious exercise of governmental power and constitutes wrongful detention, false arrest and malicious prosecution in violation of the Fourth Amendment.

65. As a result of Deputy Moore's deliberate indifference to the plaintiff's right to be secure from unlawful seizure, the plaintiff suffered mental anguish, embarrassment and financial loss.

66. Plaintiff therefore sues Deputy Moore for his deliberate indifference to and violation of his rights under the Fourth Amendment. He seeks the following relief:

    a.    Economic damages for non-economic damages for pain and suffering, mental and emotional anguish, and loss of enjoyment of life;

    b.    Punitive damages; and

    c.    Attorney's fees pursuant to 42 U.S.C. § 1988.

## Municipal Liability

67. Plaintiff hereby incorporates paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. The Due Process Clause of the Fourteenth Amendment prohibits Defendant Knox County, Tennessee from having any custom, policy, or procedure which would constitute the

proximate cause of its officers' deprivation of any citizen's constitutional rights. Where such a custom, policy, or procedure has resulted in its officers' deprivation of a citizen's constitutional rights under 42 U.S.C. § 1983, sovereign immunity is removed, thereby allowing the citizen to recover his damages in a suit against the municipality.

69. The conduct by Deputy Moore in asserting that he smelled alcohol when no evidence of alcohol existed, and when he was confronted with contradictory evidence by the plaintiff and other officers on the scene, is proof that this was a custom and practice of the Knox County Sheriff's Office.

70. The failure of the other deputies to make any attempt to intervene in Deputy Moore's decision to arrest the plaintiff for DUI despite the clear lack of any evidence of alcohol or drugs is proof that this was a custom and practice of the Knox County Sheriff's Office.

71. The actions of these deputies to allow the plaintiff to be arrested and to go along with the arrest by stating that such arrest would likely not affect the plaintiff because he would probably keep his job that the District Attorney would likely agree to a plea deal is proof that this was a custom and practice of the Knox County Sheriff's Office.

72. Upon information and belief, Knox County is liable to the plaintiff pursuant to 42 U.S.C. § 1983 based on its history of prior incidences where its officers arrest persons for DUI despite there being no evidence of alcohol or drugs in the person's system. This history of similar incidences constitutes a custom thereby rendering the county liable.

73. Upon information and belief, Knox County has negligently and/or recklessly failed to adequately train its officers who observe other officers engaging in a false arrest as to their duty to intervene.

10

74. In this case, Deputy Moore's negligent and/or reckless arrest of the plaintiff evidences a negligent and reckless lack of training in proper procedures and methods related to unlawful seizure under the Fourth Amendment.

75. Knox County is liable to the plaintiff because its customs, policies, and procedures were the proximate cause of Deputy Moore's deliberate indifference to the plaintiff's constitutional right against unlawful seizure.

76. Plaintiff therefore sues Knox County and seeks the following relief:

    a. Non-economic damages for pain and suffering, mental and emotional anguish, and embarrassment; and

    b. Attorney's fees pursuant to 42 U.S.C. § 1988.

## B. Tenn. Code Ann. § 29-20-202 et seq.
## Tennessee Governmental Tort Liability Act – Negligence

77. Plaintiff hereby incorporates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. Knox County, Tennessee was at all times hereto responsible for the training and supervision of their officers, employees and/or agents.

79. Pursuant to the Tennessee Governmental Tort Liability Act, Deputy Moore and Knox County owed the plaintiff a duty of care to be free from illegal actions that would cause mental pain, mental anguish and embarrassment.

80. These Defendants breached the duty of care as set forth herein and are therefore liable to the plaintiff pursuant to the Act.

81. Plaintiff sues these Defendants under the Act for all the reasons previously set forth herein, which are causally related to his injuries, and seeks money damages in the maximum amount allowed pursuant to the Tennessee Governmental Tort Liability Act.

## V. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Taylor Skinner respectfully requests this Honorable Court grant relief as follows:

a. Issue process, requiring the Defendants to answer this Complaint;

b. Empanel a jury to try this cause;

c. Award compensatory damages against all Defendants pursuant to the claims brought pursuant to 42 U.S.C. § 1983 in the amount of $300,000.00

d. Award compensatory damages against Defendants in the maximum amount allowed under the Tennessee Governmental Tort Liability Act;

e. Award punitive damages against Deputy Jacob Moore in the amount of $300,000.00;

f. Award Plaintiff attorney's fees pursuant to 42 U.S.C. § 1988;

g. Award costs of this action including discretionary costs; and

h. Award any other or further relief to which he may be entitled.

Respectfully submitted this 10th day of April, 2026.

/s/ *Thomas J. Smith*
Thomas J. Smith, BPR #35331
Marcos M. Garza, BPR #021483
Jason E. Legg, BPR #018765
Philip La Nasa, BPR #026148
Brent Morris, BPR #024621
Andy Cofer, BPR #042258
David Houbre, BPR #029221
**GARZA LAW FIRM, PLLC**
118 E. Watauga Ave.
Johnson City, TN 37601
Phone: (423) 282-1041
Fax: (865) 474-9397
Email: tsmith@garzalaw.com

13